# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ABDUR RAHAMAN<br>as Personal Representative of<br>SHARIFA BELGUM and<br>MAHAMUDUL HASAN HRIDOY,<br><br>Plaintiffs,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC.,<br>THE CHILDREN'S PLACE, and<br>WAL-MART STORES, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. N15C-07-174 MMJ |

Submitted: February 3, 2016
Decided: May 4, 2016

Upon Defendants' Motion to Dismiss
**GRANTED**

## MEMORANDUM OPINION

Jonathan Greenbaum, Esq. (Argued), Barry Coburn, Esq., Coburn & Greenbaum PLLC, Peter B. Andrews, Esq., Craig J. Springer, Esq., Andrews & Springer LLC, Attorneys for Plaintiffs

Mary E. Gately, Esq. (Argued), Victoria Bruno, Esq., John Reed, Esq., DLA Piper LLP (US), Attorneys for Defendant The Children's Place, Inc.

Robert P. Fletcher, Esq. (Argued), Robert F. Reklaitis, Esq., Jeffrey L. O'Hara, Esq., Andrew L. Cole, Esq., LeClair Ryan, Attorneys for Defendant J.C. Penney Corporation, Inc.

David Debold, Esq. (Argued), Thomas Dupree, Esq., Jason R. Meltzer, Esq., Gibson, Dunn & Crutcher LLP, Stephen C. Norman, Esq., Potter Anderson & Corroon LLP, Attorneys for Defendant Wal-Mart Stores, Inc.

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

On April 23, 2013, cracks were noticed in Rana Plaza, an eight-story commercial building in Savar, Bangladesh. The building was evacuated. An engineer declared Rana Plaza unsafe and requested a more thorough inspection by public authorities. Despite knowing that the building was unsafe, managers demanded workers return to work the next day. On April 24, 2013, Rana Plaza collapsed. More than 1,000 people were killed and more than 2,000 people were injured.

On July 21, 2015, Plaintiffs Abdur Rahaman, as personal representative of Sharifa Belgum, and Mahamudul Hasan Hridoy filed their Complaint against Defendants J.C. Penney Corporation, Inc., The Children's Place, Inc., and Wal-Mart Stores, Inc. The Complaint asserts two claims—negligence and wrongful death. Plaintiffs allege that Defendants acted negligently in failing to ensure safe and healthy working conditions for garment factory employees at Rana Plaza. Abdur Rahaman is the husband and personal representative of Sharifa Belgum, a worker in one of the five garment factories in Rana Plaza who died in the collapse. Mahamudul Hasan Hridoy worked in one of the five garment factories in Rana Plaza and was injured in the collapse. Plaintiffs seek to bring this lawsuit as a class action on behalf of other similarly situated workers and their representatives.

On September 18, 2015, Defendants filed their Motion to Dismiss.

3

Defendants argue that the Complaint should be dismissed because Plaintiffs' claims were filed after the expiration of the one-year statute of limitations period under Bangladesh law. Defendants also argue for dismissal because the Complaint fails to allege an essential element of each claim—a duty of care imposed by law that Defendants owed to Plaintiffs.

On November 20, 2015, Plaintiffs filed their Memorandum in Opposition to the Defendants' Motion to Dismiss. Plaintiffs contend that their claims are not time-barred and that the Complaint was timely filed under both Delaware and Bangladeshi law. Plaintiffs also argue that Defendants knew or should have known of the structural issues plaguing Rana Plaza, and thus owed Plaintiffs a duty of care to ensure a safe workplace.

On December 23, 2015, Defendants filed their Reply Brief in Support of the Motion to Dismiss.

After briefing, the Court held oral argument on the Motion to Dismiss.

## STANDARD OF REVIEW

### *Failure to State a Claim*

When reviewing a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1] The Court

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

4

must accept as true all non-conclusory, well-pleaded allegations.[2] Every reasonable factual inference will be drawn in favor of the non-moving party.[3] If the claimant may recover under that standard of review, the Court must deny the motion to dismiss.[4]

### *Heightened Pleading Standard*

Pursuant to Superior Court Civil Rule 9(b), a plaintiff alleging negligence must state with particularity the circumstances constituting negligence. "When pleading negligence, plaintiffs have to meet the heightened standard of Rule 9(b), and must specify a duty, a breach of the duty, who breached the duty, what act or failure to act caused the breach, and the party who acted."[5]

In requiring a plaintiff to plead with particularity, Rule 9(b) operates to: (1) provide defendants with enough notice to prepare a defense; (2) prevent plaintiffs from using complaints as fishing expeditions to unearth wrongs about which they had no prior knowledge; and (3) preserve a defendant's reputation and goodwill against baseless claims.[6]

---

[2] *Id.*

[3] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[4] *Spence*, 396 A.2d at 968.

[5] *Rinaldi v. Iomega Corp.*, 1999 WL 1442014, at *7 (Del. Super.).

[6] *In re Benzene Litig.*, 2007 WL 625054, at *6 (Del. Super.).

## ANALYSIS

### *Statute of Limitations*

#### Parties' Contentions

Defendants argue that the Complaint should be dismissed because Plaintiffs failed to file it within the required time period. Defendants contend that Bangladeshi law applies to this dispute because Bangladesh has the most significant relationship to the causes of action asserted. Therefore, Defendants argue, Delaware's borrowing statute[7] applies and borrows the limitations period of the state or country where the cause of action arose if that period is shorter than the period mandated under Delaware law. Delaware has a two-year limitations period for personal injury and wrongful death claims.[8] The Bangladesh Limitation Act, 1908 ("Limitation Act") dictates that the limitations period for personal injury and wrongful death claims arising out of alleged negligence is one year from the date that the death or injury occurred.[9] Defendants contend that Bangladesh's limitation period applies because it is shorter than Delaware's period. The Complaint alleges that the deaths and injuries occurred on April 24, 2013. The Complaint was filed September 24, 2015. Therefore, Defendants argue that Plaintiffs' claims are time-

---

[7] 10 *Del. C.* § 8121.
[8] 10 *Del. C.* §§ 8107, 8119.
[9] Fatal Accidents Act of 1855 § 1; Bangladesh Limitation Act 1908, Arts. 21, 22.

6

barred under Bangladeshi law.[10]

Plaintiffs contend that the Bangladeshi one-year statute of limitations does not apply to this action. Plaintiffs claim that Delaware has the most significant relationship to the cause of action and therefore its limitations period should apply. Plaintiffs further argue that choice of law principles favor applying Delaware law, especially given the shortcomings of the Bangladeshi legal system to be able to handle a case of this size and nature. The case originally was filed in the United States District Court for the District of Columbia on April 23, 2015. The present Complaint was filed in this Court on July 21, 2015. On July 22, 2015, the action before the District Court was voluntarily dismissed. Plaintiffs contend that filing a class action in federal court tolls the statute of limitations for subsequent filings, and therefore the Complaint is not time-barred under Delaware law.[11]

Plaintiffs next argue that even if Bangladeshi law is applicable, the Complaint would not be time-barred. Plaintiffs claim that the case could be brought under Bangladesh's general tort law[12] or the Indian Succession Act of 1925, both of which are subject to a six-year statute of limitations.

Plaintiffs claim that even if the claims were brought under articles 21 and 22 of the Limitation Act, they still would not be subject to a one-year limitation

---

[10] Defendants claim that even if Delaware's two-year limitations period were to apply, Plaintiffs' claims still would be time-barred.

[11] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 559 (1974).

[12] Bangladesh Limitation Act 1908, Art. 120.

period. Section 13 of the Limitation Act tolls the limitations period and states that the time a defendant spends outside of Bangladesh shall be excluded from computation of the limitation period. While Bangladeshi courts have not addressed whether section 13 applies to foreign corporations, Plaintiffs argue that other common law countries similar to Bangladesh recognize this provision for such parties. Further, section 20 of the Bangladeshi Code of Civil Procedure provides that corporations can be sued in tort if the cause of action arises in Bangladesh. While Bangladeshi law does not address foreign corporations, Plaintiffs rely on persuasive Indian law, which states that absentee foreign corporations can be sued where the resultant damage occurs in India. The statute of limitations for section 13 is six years. Therefore, Plaintiffs argue, their claims are not time-barred.

<div align="center">Discussion</div>

**<div align="center">Choice of Law</div>**

As the forum state, Delaware applies its own choice-of-law rules.[13] In determining whether the law of Delaware or the law of Bangladesh governs the controversy, the Court must consider the facts in accordance with the "most significant relationship" test.[14] That test, as articulated by the Delaware Supreme

---

[13] *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981).

[14] *Oliver B. Cannon & Son, Inc., v. Door-Oliver, Inc.*, 394 A.2d 1160, 1166 (Del. 1978).

<div align="center">8</div>

Court,[15] is set forth in section 145 of the Restatement (Second) Conflict of Laws and provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The most significant relationship test "does not authorize a court to simply add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts . . . ."[16] Rather, the contacts are to be evaluated qualitatively in order to determine which factors are most important in a particular case.

In *Lee v. Choice Hotels International, Inc.*,[17] plaintiff suffered personal injuries when he nearly drowned in a hotel swimming pool while staying at the Quality Resort Waterfront City in Batam, Idonesia. Plaintiffs alleged that Choice

---

[15] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46–47 (1991).
[16] *Id.* at 48 n.6.
[17] 2006 WL 1148737 (Del. Super.).

Hotels International, Inc., a Delaware corporation, was liable as franchisor of Quality Resort Waterfront City. Plaintiffs argued that Delaware law applied to the dispute. Choice Hotels argued that Indonesian law applied.[18]

The Court looked to the "most significant relationship test" to determine the choice of law issue. The Court determined that Indonesian law had the most significant relationship to the dispute.[19] Although Choice Hotels was incorporated in Delaware and Delaware was the chosen forum, the Court found that "there is a rebuttable presumption in favor of applying Indonesian law since the accident occurred there and that presumption should not be disturbed where place of incorporation is the only factor favoring the forum."[20]

In *Bell Helicopter Textron, Inc. v. Arteaga*,[21] the Delaware Supreme Court conducted a choice of law analysis pursuant to the most significant relationship test. In *Bell Helicopter*, representatives of Mexican citizens brought a products-liability action against the Delaware manufacturer of a helicopter part that malfunctioned and caused the helicopter to crash in Mexico, killing all onboard.[22] Defendants argued that Mexican law applied to the claims. Plaintiff argued that Texas law applied.

---

[18] *Id.* at *2.
[19] *Id.*
[20] *Id.*
[21] 113 A.3d 1045 (Del. 2015).
[22] *Id.* at 1048.

The Delaware Supreme Court held that Mexican law applied to the case. In examining the four contacts, the Court found: (1) the injury occurred in Mexico, which was not considered fortuitous because the victims were Mexican citizens;[23] (2) although the defective helicopter part was manufactured in Texas, it was never intended to be used in Texas and was used only in Mexico;[24] (3) plaintffs' location (Mexico) was more pertinent than that of Bell Helicopter (Texas) because "the decedents' representatives live with the consequence of the decedents' deaths in Mexico;"[25] and (4) the relationship between the parties was centered in Mexico because that is where the helicopter crash occurred.[26]

In the present case, the "most significant relationship test" favors the application of Bangladeshi law. The first contact—"the place where the injury occurred"—favors applying Bangladeshi law. The injuries suffered by Plaintiffs occurred in Bangladesh as a result of the collapse of Rana Plaza. As in *Bell Helicopter*, the fact that the injuries occurred in Bangladesh is not fortuitous. The victims in this case are Bangladeshi citizens, working in a factory in Bangladesh. Plaintiffs were not "fortuitously" in Bangladesh—they were there as citizens reporting to work.

---

[23] *Id.* at 1053–54.
[24] *Id.* at 1054–56.
[25] *Id.* at 1056.
[26] *Id.* at 1056–57.

11

The second contact—the place where the conduct causing the injury occurred—favors applying Bangladeshi law. The Complaint states that Defendants' failure to monitor the construction of Rana Plaza and to inspect the building to ensure compliance with local building codes led to the building's collapse.[27] Accordingly, the alleged negligent conduct causing the injury was centered in Bangladesh.

The third contact—"the domicil[e], residence, nationality, place of incorporation and place of business of the parties"—does not weigh heavily toward either Delaware or Bangladeshi law. Plaintiffs reside in Bangladesh. Defendants are all incorporated in Delaware, but do business around the world. To the extent that Plaintiffs here, similar to plaintiffs in *Bell Helicopter*, must live with the consequences of the injuries sustained and the decedents' deaths—their location in Bangladesh may be more pertinent.

The fourth contact—"the place where the relationship, if any, between the parties is centered"—favors applying Bangladeshi law. Rana Plaza is located in Bangladesh and the garments that Defendants source are produced in Bangladesh. Defendants' incorporation in Delaware and the fact that the garments are being manufactured in Bangladesh for the U.S. market do not provide a nexus to Delaware great enough to consider Delaware as the place where the relationship is

---

[27] Complaint, ¶ 29 (Trans. ID 57585318).

12

centered. The relationship is centered where the garments are produced and the injuries occurred—Bangladesh.

The Restatement presumption favors application of Bangladeshi law. The only factor that even slightly points to applying Delaware law is Defendants' place of incorporation. The injury occurred in Bangladesh, the conduct causing the injury occurred in Bangladesh, and the relationship between the parties' is centered in Bangladesh. The Court finds that Bangladesh has the most significant relationship to the occurrence and the parties. Therefore, Bangladeshi law will apply.

**Bangladeshi One-Year Statute of Limitations Governs the Dispute**

The Limitation Act, 1908 dictates the limitations periods for suits filed in Bangladesh.[28] Pursuant to section 3 of the Limitation Act, Bangladeshi courts must dismiss any suit filed after the period of limitation has expired.[29] Section 12 of the Limitation Act states that the time period for bringing a suit begins the day after the event or occurrence which gives rise to a cause of action.[30]

The First Schedule of the Limitation Act notes the applicable limitations period for a specific cause of action.[31] Article 21 of the Limitation Act sets for the

---

[28] Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint, Exhibit A: Declaration of Nihad Kabir ("Nabir Declaration"), ¶ 24 (Trans. ID 57919681).
[29] *Id.* at ¶ 25.
[30] *Id.* at ¶ 29.
[31] *Id.* at ¶ 27.

13

applicable limitation period for wrongful death claims.[32] Article 21 of the First Schedule provides a limitation period of one year, from the date of the death of the person killed, for suits to be filed by executors, administrators or representatives under the Fatal Accidents Act, 1855 ("Fatal Accidents Act").[33] The Fatal Accidents Act created a cause of action "to provide compensation to families for loss occasioned by the death of a person caused by actionable wrong."[34]

Article 22 of the Limitation Act sets forth the applicable limitation period for bodily injury claims.[35] Article 22 of the First Schedule provides a limitation period of one year, from when the injury is committed, for suits for compensation for any other injury to the person.[36] The term "bodily injury" found in article 22 encompasses bodily injuries caused by a negligent act or omission.[37]

Delaware law permits Delaware courts to apply the laws of different states or countries. Delaware's borrowing statute provides:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a

---

[32] *Id.* at ¶ 28.
[33] *Id.*
[34] Nabir Declaration, Exhibit 4: The Fatal Accidents Act, 1855.
[35] Nabir Declaration, ¶ 28.
[36] *Id.*
[37] *Id.* at ¶ 34.

14

person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.[38]

The Delaware limitations period for wrongful death and personal injury actions is two years.[39] Because the one-year limitations period for these causes of action dictated by Bangladeshi law is shorter than that prescribed by Delaware law, the Bangladeshi limitations periods will apply.

The parties have submitted competing expert opinions as to the application of Bangladesh's statute of limitations to the dispute. While the experts disagree as to whether an exception applies, all agree that the Limitation Act applies.[40] Further, the experts agree that articles 21 and 22 are the relevant sections for this dispute.[41]

Plaintiffs' experts, Dr. Ridwanul Hoque and Mohammad Saqib Jillani, each argue that an exception to the one-year limitations period applies. Jillani contends that section 6 of the Limitation Act provides an exception where a claimant suffers from some kind of disability.[42] The exception for legal disability provides:

> Where a person entitled to institute a suit [or proceeding] or make an application for the execution of the decree is, at the time from which

---

[38] 10 *Del. C.* § 8121.

[39] 10 *Del. C.* §§ 8107, 8119.

[40] Nabir Declaration, ¶ 24; Plaintiffs' Memorandum in Opposition to the Defendants' Motion to Dismiss, Exhibit A: Declaration of Ridwanul Hoque ("Hoque Declaration"), ¶ 32 (Trans. ID 58190374); Plaintiffs' Memorandum in Opposition to the Defendants' Motion to Dismiss, Exhibit B: Declaration of Mohammad Saqib Jillani ("Jillani Declaration"), ¶ 3.1 (Trans. ID 58190374).

[41] Nabir Declaration, ¶¶ 30–34; Hoque Declaration, ¶ 32; Jillani Declaration, ¶ 3.1.

[42] Jillani Declaration, ¶ 3.2.

15

the period of limitation is to be reckoned a minor, or insane, or an idiot, he may institute the suit [or proceeding] or make the application within the same period after the disability has ceased, as would otherwise have been allowed from the time prescribed therefor in the third column of the First Schedule [or in section 48 of the Code of Civil Procedure, 1908 (Act V of 1908)].[43]

This exception is not applicable to the present case. Plaintiffs argue that the limitations period should be tolled because many of the employees killed or injured in the Rana Plaza collapse were children. These minor children are part of a proposed class. The Court will not recognize this exception in this case because Plaintiffs have not pursued certification of the class. The issue of class standing has not been properly raised for the Court's consideration. The proposed class, therefore, remains undefined. The cases cited by Jillani are distinguishable. In each case, the minor was identified to the Court.[44] Here, the alleged minors injured or killed have not been identified in any way to the Court. The Court will not consider an exception to the limitations period based on the rights of parties who have not been properly named to the suit.

---

[43] *Id.*

[44] Jillani Declaration, ¶ 3.3.2 ("[O]ne of the plaintiffs namely Sheheryar Zaka the respondent No. 2 undeniably suffered from a legal disability of minority and the time for the limitation for instituting the suit, in question, cannot be said to run against any of them."); Id. at ¶ 3.3.3 ("Mst Tahira Begum and Ayazudding could not give a valid and legal discharge on behalf of two minor children who were entitled to the damages in their own right."); Id. at ¶ 3.3.4 ("Since the plaintiffs-respondents, who are co-heirs, as tenants-in-common, having distinct shares, and since Mst. Chhotibai could not under Hindu Law give a discharge in her own right in respect of the rights of her daughters, the third proposition applies so that the second part of s. 7 comes into play.").

Hoque contends that the limitation period should be "relaxed." He notes that Bangladeshi law does not provide a specific answer as to whether a suit of this kind can enjoy relaxed limitation periods and states that there is no case law that specifically addresses the issue.[45] Hoque argues that the Bangladeshi practice of allowing for "legal leeway for judicial intervention" would operate here to extend the limitations period in this suit.[46]

Hoque points to section 13 of the Limitation Act, which states that in computing the period of limitation, any time spent by the defendant outside of Bangladesh shall be excluded.[47] Hoque states that section 13 was enacted for a defendant who is a Bangladeshi national, but argues that same rationale can be adopted for non-resident defendants. Hoque argues that section 20 of the Code of Civil Procedure, 1908, reveals that foreign corporations that are absent from Bangladesh may be sued for torts in Bangladesh if the cause of action, wholly or in part, arises there.[48] Hoque contends, because Defendants' negligence led to the failure to ensure a safe working place, which led to the collapse of Rana Plaza, they can be treated as absentee defendants for the purpose of tolling the limitations period.[49]

---

[45] Hoque Declaration, ¶ 33.
[46] *Id.*
[47] Hoque Declaration, ¶ 35.
[48] *Id.*
[49] *Id.*

17

Hoque also relies on a recent decision by the Supreme Court of Bangladesh where the Court relaxed the limitations period dictated by Article 22 of the Limitation Act. In *Bangladesh Beverage Industries v. Rowshan Akhter*, representatives of a decedent killed in an auto accident brought suit against the negligent driver, pursuant to Article 22.[50] Twelve years after the suit was instituted, Plaintiff sought to add Bangladesh Beverage Industries, the employer of the driver involved in the accident. Bangladesh Beverage argued that the one-year limitation period under Article 22 barred Plaintiffs from adding Bangladesh Beverage to the suit. The Court held that the original action was properly filed within one year and that the addition of Bangladesh Beverage to the suit related back to the institution of the suit. The Court stated:

> The parties agreed that the instant occurrence is tortious liability and according to me, tortious liability is a continuous compensatory liability [that] can be brought within a reasonable time as there is no limitation prescribed under law of Tort, as such, Article 120 of the Limitation Act i.e. where there is no prescribed limitation, [an] action can be brought within six years from the date of occurrence.[51]

However, Hoque admits that the Court's statement is "deficient in its reasoning and it is not true that tort claims are not subject to any limitation."[52]

While Bangladeshi courts may carve out exceptions to limitations periods where they find that justice so requires, this Court will not disturb such a period

---

[50] Hoque Declaration, Annex 6.1: *Bangladesh Beverage v. Rowshan Akhter*, 62 DLR (2010) 483.
[51] *Id.* at 495.
[52] Hoque Declaration, ¶ 37.

18

where the plain reading of the statute provides a clear answer. The Complaint alleges causes of action for negligence and wrongful death. The limitations periods for these causes of action are addressed by Articles 21 and 22 of the Limitation Act. Articles 21 and 22 each provide a one-year limitation period. The collapse of Rana Plaza occurred on April 24, 2013. The Complaint was filed on July 21, 2015. Therefore, Plaintiffs' claims are time-barred by the Bangladesh one-year statute of limitations.

### *Duty of Care*

#### Parties' Contentions

Defendants contend that Complaint must be dismissed because Plaintiffs failed to state a claim for negligence. Defendants argue that Plaintiffs have failed to allege any reasonably conceivable set of circumstances capable of establishing that Defendants owed a duty of care to Plaintiffs. Further, Defendants argue that Plaintiffs have not pled the existence of any duty with particularity, as is required under Delaware Superior Court Rule 9(b).

Defendants state that this case involves nonfeasance—an omission to act. Plaintiffs have alleged that Defendants failed to implement standards and oversight mechanisms; failed to monitor construction of Rana Plaza; failed to properly inspect the building to ensure compliance with local code; and failed to take reasonable steps to implement policies, audits, or other oversight to ensure that

19

workers were safe and healthy. Defendants argue that nonfeasance cases, such as this one, require the existence of a special relationship between the parties.[53] Defendants claim that their relationship with Plaintiffs is too attenuated to impose a duty of care on Defendants. The Complaint recognizes that "[l]ocal manufacturers and global brands rely on a system of 'indirect sourcing.'" Defendants argue that this relationship is insufficient to impose a duty of care owed by Defendants to Plaintiffs.

Defendants argue that Plaintiffs' wrongful death claim must fail for the same reasons. To prevail on a wrongful death claim, Plaintiffs must prove the same legal duty required for a negligence claim. Defendants argue that the wrongful death claim must be dismissed if the underlying negligence claim fails.

Plaintiffs contend that Defendants knew or should have known of the safety risks occurring in Bangladeshi garment factories. Plaintiffs claim that the conditions present in the garment factories from which Defendants sourced clothing presented a peculiar risk. Plaintiffs argue that Defendants knew or should have known of the structural issues plaguing Rana Plaza, and thus owed Plaintiffs a duty of care to ensure a safe workplace.

---

[53] *Doe 30's Mother v. Bradley*, 58 A.3d 429, 448 (Del. Super. 2012).

Discussion

The parties agree that Delaware law applies to the determination of whether Plaintiffs' Complaint adequately alleges claims for negligence and wrongful death against Defendants. There is no Bangladesh case on point. Therefore, the Court need not engage in a choice of law analysis. Delaware law applies to this determination.

Delaware law requires plaintiffs to adequately plead three elements in order to state a claim for negligence: (1) a duty of care owed by defendants to plaintiffs; (2) a breach of that duty by defendants; and (3) injury to plaintiffs proximately caused by the breach.[54] In negligence cases alleging nonfeasance, or an omission to act, there is no general duty to others without a "special relationship" between the parties.[55] The Delaware Supreme Court in *Riedel v. ICI Americas Inc.*,[56] held: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."[57]

Plaintiffs do not allege the existence of a special relationship, but rather argue that an exception applies. Plaintiffs argue that Defendants operate within a supply chain such that Plaintiffs are employed as independent contractors for

---

[54] *Id.* at 447.
[55] *Id.* at 447–48.
[56] 968 A.2d 17 (Del. 2009).
[57] *Id.* at 22 (citing RESTATEMENT (SECOND) TORTS § 314 (AM. LAW INST. 1965)).

21

Defendants. Plaintiffs claim that this relationship, coupled with the known safety risks at Rana Plaza, created a duty of care under the "peculiar risk" doctrine.

"Under the peculiar risk doctrine, one who employs an independent contractor to do work which the employer should see is likely to create a peculiar risk of physical harm unless special precautions are taken, is subject to liability for injuries caused by the absence for such precautions."[58] The risk contemplated by the doctrine is "peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable [person] would recognize the necessity of taking special precautions."[59] However, "application of the doctrine is limited so that employers of independent contractors will not have to become conversant with all activities of their contractors."[60]

In the present case, Plaintiffs argue that they are within the protected class under the peculiar risk doctrine. However, Plaintiffs were employees of garment factories within Rana Plaza—they were not employees of Defendants. A plain reading of Chapter 15, section 409 demonstrates that Plaintiffs are not within the class protected by the peculiar risk doctrine. Section 409 states: "Except as stated in §§ 410–29, the employer of an independent contractor is not liable for physical harm caused to another by an act of omission of the contractor or his servants."

---

[58] *In re Asbestos Litig.*, 2002 WL 31007993, at *1 (Del. Super.).
[59] *Bryant v. Delmarva Power & Light Co.*, 1995 WL 653987, at *6 (Del.Super.) (citing RESTATEMENT (SECOND) OF TORTS § 413 (AM. LAW INST. 1965)).
[60] *In re Asbestos Litig.*, 2002 WL 31007993, at *1.

In *Monk v. Virgin Islands Water & Power Authority*,[61] the United States Court of Appeals for the Third Circuit agreed and held that "employers should not be held liable to an independent contractor's employees under section 413."[62] The class intended to be protected by this doctrine is third-party bystanders.[63] Thus Plaintiffs cannot invoke the doctrine to create a duty of care owed to them by Defendants.

Further, Defendants cannot claim protection under this section because there are no allegations in this case that constitute a "peculiar risk." "A peculiar risk is a special risk peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions."[64] Plaintiffs have not identified a risk peculiar to the garment industry. The inadequacies in the construction of Rana Plaza are not peculiar to the business in which Defendants engaged. Defendants could not be reasonably expected to take precautions against a building collapse when deciding to source garments from factories in Bangladesh.

---

[61] 53 F.3d 1381 (3d. Cir. 1995).

[62] *Id.* at 1394.

[63] *In re Asbestos Litig.*, 2002 WL 31007993, at *2 ("This section does not define the class of protected "others," but a plain reading suggests that the class does not include a contractor's employees, particularly when read *in pari materia* with § 409's phrase 'harm caused to another by an act or omission of the contractor or his servants.' The Comment to § 413 provides that the risk is 'a special danger to those in the vicinity.'").

[64] *Bryant*, 1995 WL 653987, at *6.

The Court need not decide whether a general contractor/independent contractor relationship exists. Even if the Court were to find that Defendants are general contractors, under Delaware law, "generally, an owner or general contractor does not have a duty to protect an independent contractor's employees from the hazards of completing the project."[65] However, there are exceptions to this rule. "A general contractor has a duty to protect an independent contractor's employees when the general contractor: (1) actively controls the manner and method of performing the contract work; (2) voluntarily undertakes the responsibility for implementing safety measures; or (3) retains possessory control over the work premises during work."[66] None of these exception apply to Defendants in this case. Defendants' only contact with the garment factories in Bangladesh was through a system of indirect sourcing.[67] Defendants neither voluntarily undertook any safety responsibilities, nor controlled the work being done in Rana Plaza in any fashion. Accordingly, Defendants did not owe Plaintiffs any general contractor's duty of care.[68]

---

[65] *Hawthorne v. Edis Co.*, 2003 WL 23009254, at *2 (Del. Super.).

[66] *Handler Corp. v. Tlapechco*, 901 A.2d 737, 743 (Del. 2006).

[67] Complaint, ¶ 41.

[68] This doctrine preventing contractor liability seems to be contrary to public policy. A general contractor can hire independent contractors, and as long as the general contractor ignores workplace safety, the general contractor is shielded from liability to the employees of independent contractors. The Court suggests that the better rule would be to encourage general contractors to take all reasonable measures to ensure the safety of all workers on the job site. Such efforts should be encouraged—not affirmatively stifled as a means to escape liability. A general contractor's efforts to provide a safe work environment could be rewarded, and

24

Plaintiffs next argue that Plaintiffs knew or should have known of the unsafe working conditions in Rana Plaza. Plaintiffs contend that Defendants were aware of the long history of injuries and fatalities due to the poor working conditions in the garment factories. Plaintiffs claim that the ethical sourcing statements made by Defendants imposed on Defendants a duty of care. These statements by Defendants do not, by themselves, create a duty to employees of independent contractors where a duty does not otherwise exist. Plaintiffs fail to allege that Defendants fall into one of the three exceptions for general contractor liability. Even if Defendants knew or should have known of the risks at Rana Plaza, without asserting active control over the performance of the work, voluntarily taking responsibility for implementing safety measures, or retaining possessory control over the premises, Defendants do not owe Plaintiffs a duty of care.

Plaintiffs further contend that Defendants owed Plaintiffs a duty of care under the illegal conduct exception. The illegal conduct exception imposes liability on the employer of an independent contractor where "the employer causes or knows of and sanctions illegal conduct."[69] The Court finds that Plaintiffs have failed to set forth any evidence that Plaintiffs were required to engage in illegal conduct in order to manufacture the garments sourced by Defendants. Plaintiffs

---

supported by the law refusing to impose liability on a general contractor who endeavors to do the right thing. Evidence of a general contractor undertaking safety measures could be handled in the same manner as subsequent remedial measures. There is no public policy benefit to punishing a general contractor who seeks to keep workers safe.

[69] *Colon v. Gannett Co.*, 2013 WL 5819666, at *1 (Del.).

25

have not pointed to any provision in Defendants' agreements with the party with whom Defendants contracted to source garments from factories in Rana Plaza that states that Plaintiffs' work should be performed in contravention of the law. Plaintiffs have identified no practice that would require, as a practical matter, illegal conduct in the manufacturing of garments.

Plaintiffs finally argue that at the motion to dismiss stage, without having engaged in discovery, questions of fact remain as to whether Defendants voluntarily assumed the responsibility to provide a safe workplace for the independent contractor's employees. The United States Court of Appeals for the Ninth Circuit faced the same issue at the motion to dismiss stage in *Doe I v. Wal-Mart Stores, Inc.*[70] The complaint in Doe alleged that "Defendant breached its supplier contracts by failing to adequately monitor supplier factories" in China, Bangladesh, Indonesia, Swaziland, and Nicaragua.[71] Plaintiffs asserted several negligence claims against defendant and argued that "Defendant, through vicarious liability, is responsible for its suppliers' negligence."[72] The Ninth Circuit affirmed dismissal of the negligence claims and held that "Wal-Mart did not owe Plaintiffs a common-law duty to monitor Wal-Mart's suppliers or to prevent the alleged

---

[70] 572 F.3d 677 (9th Cir. 2009).
[71] *Doe I v. Wal-Mart Stores*, 2007 WL 5975664, at *2–3 (C.D. Cal.).
[72] *Id.* at *4.

intentional mistreatment of Plaintiffs by the suppliers."[73] The Court further held that although Wal-Mart contracted with suppliers regarding deadlines, quality of products, materials used, prices, and other common buyer-seller contract terms, these "supply contract terms do not constitute an immediate level of 'day-to-day' control over a supplier's employees so as to create an employment relationship between a purchaser and a supplier's employees."[74]

Just as in *Doe I v. Wal-Mart*, Plaintiffs in this case have failed to allege facts to establish that Defendants owed Plaintiffs a duty of care. Defendants were not Plaintiffs' direct employer. Additionally, Plaintiffs have failed to demonstrate that an exception to the general rule for independent contractor liability exists. Plaintiffs' allegations are insufficient to prevent dismissal.

## CONCLUSION

Bangladesh has the most significant relationship to the causes of action asserted, therefore its law applies to the determination of the statute of limitations. Articles 21 and 22 of the Limitation Act govern the limitations periods for negligence and wrongful death. Each provide a one-year limitation period. The collapse of Rana Plaza occurred on April 24, 2013. The Complaint was filed on July 21, 2015. Therefore, Plaintiffs' claims are time-barred by the Bangladeshi one-year statute of limitations.

---

[73] *Walmart*, 572 F.3d at 683.
[74] *Id.*

27

The parties agree that Delaware law governs the duty of care dispute. Defendants were not Plaintiffs' direct employer and have failed to demonstrate: a "special relationship;" a "peculiar risk;" sanctioned illegal conduct; or an exception to the general rule protecting independent contractors from liability. Therefore, Plaintiffs have failed to state a *prima facie* case for negligence and wrongful death.

**THEREFORE,** Defendants' Motion to Dismiss is hereby **GRANTED.**

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston